## STUART v. PHELPS.

1. **Verdict:** EVIDENCE.  A verdict will be set aside only when clearly opposed to the weight of evidence.

2. **Conversion:** WHAT CONSTITUTES IT: EXECUTION.   J. executed a chattel mortgage upon a field of growing corn, but remained in possession thereof as tenant of the mortgagee, and defendant caused an execution to be levied upon the corn as the property of J., with whom it was left as defendant's agent: *held*, that the levy constituted a conversion.

3. ———: WORK AND LABOR.  In the case of an unlawful conversion of a field of growing corn, the trespasser is not entitled to compensation for labor subsequently rendered thereon, notwithstanding his services may have increased its value.

Stuart v. Phelps.

4. ———: BAILMENT: NEGLIGENCE. The unlawful conversion of property does not simply involve the responsibility of a bailment with mutual advantage to the parties. He who converts it is bound to exercise more than ordinary care in its preservation.

5. ———: CONFUSION OF PROPERTY. Where one unlawfully converts property upon which there is a chattel mortgage, and mingles it with other similar property free from incumbrance, upon him rests the obligation to separate it from the latter.

6. Mortgage: NOTE: CONSIDERATION. A mortgage and note, regular upon their face, are *prima facie* evidence of their validity, and the burden of proof is with the defendant to show that they were without consideration.

7. ———: ———: INSTRUCTION. An instruction, to the effect that if a mortgage was valid when executed, the subsequent payment of a part of what it was given to secure would not defeat plaintiff's right to recover for an unlawful conversion of the mortgaged property, was properly given.

*Appeal from Winneshiek Circuit Court.*

THURSDAY, JUNE 4.

PLAINTIFF claims one thousand dollars for the alleged wrongful seizure and conversion of a quantity of corn grown upon plaintiff's premises by his tenant, John T. Jester, and upon which plaintiff held a chattel mortgage.

Defendant alleges that by virtue of an execution in his favor against John T. Jester, he seized the corn as the property of Jester, and lawfully sold the same under the levy so made; and that the plaintiff's mortgage was without consideration, fraudulent, and void, and made to hinder and delay the creditors of John T. Jester. In a supplemental answer, defendant alleges that he recovered a judgment against John T. Jester for $209 and costs, and that plaintiff, in consideration of a delivery to him of a note for $1500 and the chattel mortgage in question, to secure the same, agreed to pay said judgment. Defendant prays judgment for said amount, with interest and costs. Jury trial. General verdict for plaintiff for $435.55, and also a special verdict. Defendant appeals.

*L. Bullis* and *Willett & Wellington*, for appellant.

*E. E. Cooley* for appellee.

DAY, J.—I. The first point made by appellant is that the verdict is not sustained by the evidence. It is urged that the amount actually secured by the mortgage does not exceed $350, and that this amount had been paid before the levy of the execution. The testimony shows that Jester was in the possession of the N. E. quarter of section 13, township 100, range 8, by virtue of a contract of purchase, and that the legal title was in one Atkinson. On the 1st day of April, 1870, Jester sold this property, and 18 acres of land in Minnesota, to the plaintiff for $3,600, which plaintiff paid as follows: $2,220 to Lemuel Jones, $1,000 assumed to Atkinson in whom was the legal title, $52.17 for taxes, and the balance of the purchase price, $327.83, to Jester. Jester was to remain on the place one year as Stewart's tenant, giving for rent one-third of the crop raised.

Afterward it was discovered by plaintiff that there were judgments of record against Jester, which were liens against Jester's interest in the real estate in question at the time of the sale above named, amounting to $615. To secure plaintiff against these liens, and for money advanced and to be advanced to Jester, and also to secure the breaking of certain prairie, and the performance of other undertakings, the mortgage in question was executed upon Jester's share of the crop then growing.

Appellant concedes that on account of money advanced defendant, and because of the defendant's failure to break the prairie above named, and to cut 10 acres of grass on the premises, the mortgage had a consideration to the extent of $350; but he assumes that Jester had no interest in the land situated in Iowa, that the whole consideration was paid to Jester's vendor, except about $300, and that it was paid for the 18 acres in Minnesota, and that the judgments above named in fact constituted no liens as against Jester.

We find no support for this last assumption in the evidence. The testimony shows that plaintiff assumed to pay Atkinson, who held the legal title, $1000. It does not appear but that Jester's interest extended to the entire balance of the consid-

eration. The evidence fairly establishes a consideration for the mortgage to the extent of $965.00.

It is claimed that plaintiff had been paid upon his mortgage before the levy of the execution $416. We do not understand that the evidence establishes this fact. But even if it should be conceded, there still remains more than the amount of the verdict.

We are fully satisfied with the verdict upon this branch of the case.

II. It is urged that the mortgage was fraudulent as to existing creditors. This question was submitted to the jury under appropriate instructions. This general verdict for plaintiff involves a determination that the mortgage was not fraudulent.

1. VERDICT: evidence.

We have already seen that it was not without consideration. A careful examination of all the testimony satisfies us that the verdict has a reasonable support. We set aside the verdict of a jury only when it is clearly opposed to the weight of evidence.

III. The jury, in their special verdict, found that 624 bushels of corn were sold, and that its value was 30 cents a bushel, amounting to $187.20. Appellant insists, that there was no conversion until the time of sale, and that the damages cannot exceed the value of the corn sold. We think, however, the evidence shows a conversion at the time of the levy. It is true the corn was left in the possession of Jester, the mortgagor. But it was in his possession as the agent of the defendant.

2. CONVER-SION: what constitutes: execution.

The chattel mortgage contained a provision that, in case the mortgagee should at any time deem himself insecure, he might take possession of the property and sell it at public or private sale. Now it is clear that the seizure of this property under execution, and the turning it over to Jester as the agent of defendant, just as effectually, so long as the levy continued, defeated the right of the mortgagee to take possession, as though the corn had been removed from the premises, and placed in the possession of the defendant himself.

IV. Appellant claims that, conceding the conversion to be

complete at the time of the levy, the amount of damages found had no support in the evidence. The jury, in their special verdict, fix the amount of corn planted after the delivery of the chattel mortgage at nine and one-third acres. The mortgage is upon the grain growing at the time of its execution and delivery.

The evidence shows that the whole number of acres planted was from seventy to seventy-five, and the yield from thirty to thirty-five bushels per acre. By assuming seventy-two and one-half as the number of acres, and thirty-two and one-half bushels per acre as the true yield, appellant finds the value of the corn mortgaged, at the price fixed by the special verdict, to be $410, about $35 less than the general verdict. And this, it is claimed, allows for the value of the corn in the crib, without any compensation for husking and cribbing.

It is apparent, however, that the jury were fully warranted in taking seventy-five acres as the quantity and thirty-five bushels per acre as the yield. Thus estimated, the value of the corn mortgaged would be about $458, a little more than the general verdict.

If the levy was unauthorized and amounted to a wrongful conversion, defendant became a trespasser, and he is not entitled to compensation for husking and cribbing, notwithstanding those acts may have increased the value of the property. See *Baker v. Wheeler & Martin*, 8 Wendell, 505; *Silsbury et al. v. McCoon et al.*, 3 Comstock, 379.

3. ——: ——: work and labor.

V. Evidence was introduced tending to show that after the levy, and before the corn was cribbed, much of it was destroyed by cattle.

Defendant assigns as error the refusal of the court to give the following instruction :

" The damages caused by the trespassing of animals, shown in evidence, the defendant is not liable for, unless he or his agent was guilty of negligence or want of care in harvesting. The defendant or his agent could not be required to fence the premises, and if the adjoining neighbors' cattle did the injury by crossing the line where

4. ——: bailment: negligence.

there was no lawful fence, and defendant and his servants dili-
gently gathered the crops and used ordinary care and diligence,
the defendant cannot be held for damages caused thereby."

This instruction it will be observed requires of defendant
only the exercise of ordinary care. It imposes upon defend-
ant only the duties and responsibilities of a bailee, where a
mutual benefit is derived from the bailment, whereas one who
officiously intermeddles with the property of another is held to
a higher degree of care. If the defendant wrongfully caused
the levy to be made, he became a trespasser, and he can not
escape responsibility by showing the exercise of merely such
care as would exonerate him if he had acquired the possession
rightfully. See Edwards on Bailments, pp. 36,–39 and cases
cited.

VI. Defendant asked the court to instruct as follows:
" By the terms of the chattel mortgage in evidence, John T.
Jester was entitled to the possession of the mortgaged property
until default in payment of the note, or until the mortgagee,
Stuart, felt himself for any reason insecure, after which the
right to the possession would be in the mortgagee, Stuart.
If you find from the evidence that the defendant wrongfully
levied upon the corn while in the possession of J. T. Jester,
but did not remove the same, but left the same in the posses-
sion of J. T. Jester, without disturbance until after the sale,
then so far as plaintiff is concerned the conversion would only
date from the time of sale, and any damages by stock or oth-
erwise previous to the sale defendant would not be responsible
for."

The court refused to give this instruction, and this ruling
defendant assigns as error.

The court instructed the jury as follows :

" If you find that defendant wrongfully levied upon the
corn while in the possession of J. T. Jester, but did not re-
move the same, but left it in the possession of Jester, not as
his agent, but as it was before the levy until after the sale, then,
so far as plaintiff is concerned, the conversion would date
from the sale, and any damages to the corn by stock when the
corn was not in his possession, could not be charged to him."

The instruction given embodies the correct rule. We have before seen that leaving the property with Jester as defendant's agent, worked as complete a conversion as though the property had been taken into the actual possession of the defendant himself.

VII. Defendant assigns as error the refusal of the Court to give the following instruction :

"The mortgage in question, as agreed by both parties, and such is the law, did not cover any crops not growing at the time it was delivered to plaintiff, and if you find from the evidence that any corn included in that levied upon by defendant was not in the ground at the time the mortgage was delivered, then for any corn not in the ground plaintiff cannot recover, and if you find from the evidence that the corn, in question remained in the possession of John T. Jester, was harvested by him and put altogether in the crib by him, if the actual possession was not disturbed by the levy, the burden of proof will be upon plaintiff to show what corn was covered by the mortgage, and if he has failed to do this he cannot recover."

This instruction was properly refused. The evidence shows that the corn remained in Jester's possession as defendant's agent. Whilst the actual possession of Jester was not disturbed by the levy, yet the relation in which he stood to the parties and the property was affected by the levy. He husked and cribbed the corn under the direction of defendant, and as his agent.

If he mingled the mortgaged corn with that not covered by the mortgage, it is for the defendant and not the plaintiff to 5. ——: con- make the separation, if any separation was necessary for the full protection of the parties. See 2 Kent's Commentaries, 365, and cases cited.

*5. ——: confusion of property.*

VIII. Defendant also complains of the refusal of the court to give the following instruction :

"The defendant had a right to levy, under his execution, on any portion of said corn not planted prior to the delivery of the chattel mortgage in question, and if you find from the evidence that there was a quantity of said corn planted subse-

quent to the delivery of said mortgage, equal to the amount levied on and sold by virtue of said execution, then you will find for defendant."

This instruction is wrong, and was properly refused. The conversion, as we have seen, took place at the time of the levy. The levy was upon the whole crop. If defendant had, by his negligence, permitted the crop to be destroyed, so that the amount sold equaled only the amount planted after the delivery of the mortgage, then, under the above instruction, the defendant would be entitled to a verdict.

The mere statement of the proposition shows its fallacy. Besides the jury have found, as a fact, that only nine and one-third acres were planted after the delivery of the mortgage.

The quantity raised upon these was much less than the amount sold. Hence, if the instruction were even abstractly correct, and had been given, the jury could not have found for defendant, under the view which they have taken of the evidence.

IX. It is claimed that the court erred in giving the following instruction :

" The mortgage and note given by Jester to plaintiff, if regular upon their face, are of themselves *prima facie* evidence of their validity, and the burden is then upon the defendant to show that there was no consideration, or that they were given in bad faith as to Jester's creditors."

6. Mortgage: note : consideration.

This instruction is so obviously correct that we are at a loss how to illustrate its correctness or to prove it by argument.

It is no more than an embodiment of the principles that a written contract, regular upon its face, imports a consideration, that fraud must be proved, and will not be presumed, and that the burden of proof is upon the party who asserts a fact.

Appellant insists that the instruction should have been modified by adding, in substance, the following : " unless Jester was unable to pay his debts at time of making said mortgage, and such fact was known to the plaintiff."

But these facts did not and could not appear upon the face of the mortgage. If they existed, they must be established

by evidence outside of the mortgage, and if such evidence were produced, still the note and mortgage would continue to be *prima facie* evidence of their validity, and the jury would be justified in finding them invalid, only when this *prima facie* evidence was overcome by the other evidence produced.

X.    It is urged that the Court erred in giving the following instruction :

"If the mortgage was valid at the time it was given, the fact that a part of what it was given to secure was paid before the levy by defendant, would not defeat the plaintiff's right to recover for the corn taken by defendant."

7. ——: ——.
instruction.

It must be logically true that a payment of part of the amount secured either would or would not defeat plaintiff's right to recover.

The following is the converse of the above instruction : "If the mortgage was valid at the time it was given, the fact that a part of what it was given to secure was paid before the levy by defendant, would defeat the plaintiff's right to recover for the corn taken by defendant."

This is obviously wrong.    Applying to it the *reductio ad absurdum*, applied by appellant to the instruction given, we might say, then, if one dollar of the amount secured by the mortgage had been paid, plaintiff can recover nothing.    But if this last instruction is wrong, then its opposite, which is the instruction given, must be abstractly right.

If it should be conceded that the instruction should have been so modified as to limit plaintiff's recovery to the amount unpaid at the time of the levy, still the instruction as given worked no prejudice, for the evidence shows, as we have before seen, allowing all to have been paid that appellant claims, that more was unpaid than plaintiff recovered.

XI.    It is insisted that the court erred in giving the following instruction :

"An agreement by Stuart that he would buy up the Phelps judgments at a discount, if he could, would not amount to an assumption of the payment of the judgment.

To assume the payment of the judgment is to become unqualifiedly liable for its payment."

This instruction, also, is so obviously right that, like an axiom or a primary truth, it seems not susceptible of proof. It really amounts to no more than this, that a conditional agreement is not an unconditional one.

AFFIRMED.