FRENCH v. REEL, SHERIFF, ET AL.

1. **Fraudulent Transfer and Mingling of Goods:** BURDEN TO DIS-
TINGUISH OR PROVE VALUE: PRESUMPTION. Action for damages for
the wrongful seizure of goods which defendants had taken from a stock
of goods in plaintiff's possession upon a writ of attachment against the
goods of H. & C., claiming that H. & C. had transferred the stock to
plaintiff without consideration, and to delay and defraud their creditors.
There was evidence tending to show that plaintiff had sold a portion of
the stock got of H. & C., and with the proceeds purchased other goods,
which he had mingled with the stock. *Held* that, if the transfer from H.
& C. to plaintiff was fraudulent, then defendants were entitled to the
possession of so many of the goods levied on by them as belonged to the
original stock, and the burden was upon plaintiff, if he mingled the
goods, to distinguish the property so mingled, or to prove its value; and
failing so to do, the presumption of law was against him, and to the
effect that the goods levied on by defendants were a part of the origi-
nal stock.

2. **Writ of Attachment:** PRESUMPTION IN FAVOR OF. There is a legal
presumption in favor of the due execution of papers emanating from a
public office, and upon proof that the writ of attachment, under which
defendants justify in this case, emanated from a court authorized to is-
sue it, its sufficiency as to form and seal, in the absence of any proof im-
peaching it, will be presumed.

Upon a rehearing the above points were reconsidered and affirmed.

TUESDAY, JUNE 9.

*Appeal from Pottawattamie District Court.*

THE plaintiff claims of the defendants $2,000 for the al-
leged wrongful seizure and conversion of a stock of goods, of
which the plaintiff alleges he is the owner. The defendants
allege that the defendant, Reel, is sheriff of Pottawattamie
county, and the defendant, Beswick, was acting as his deputy;
that the defendant, Beswick, levied a writ of attachment upon
said goods as the property of Harter & Claus, at the suit of
Field, Leiter & Co., and that Harter & Claus, without consid-
eration, delivered said goods to the plaintiff for the fraudulent
purpose of being converted and concealed, so that neither they

nor their proceeds could be reached by the creditors of Harter & Claus. The trial was to a jury, and resulted in a verdict and judgment for the plaintiff for the value of the goods. The defendants appeal. The material facts are stated in the opinion.

*Clinton, Hart & Brewer* and *Barcroft & McCaughan*, for appellants.

*Sapp, Lyman & Ament* and *Parsons & Runnells*, for appellee.

DAY, J.—The abstract shows that the plaintiff, to sustain the issues on his part, introduced evidence tending to show that on the second day of February, 1880, and at the time of the alleged trespass, he·was the owner, and in possession of the goods in controversy, at Avoca.

The defendants upon their part introduced evidence tending to show that Harter & Claus, a co-partnership theretofore doing business at Des Moines, Iowa, were the real owners of the goods in controversy at the date of the alleged trespass, and that said French was acting as their agent merely, in possession. That he had paid nothing for said goods, and had no interest therein except as said agent in charge. They introduced further evidence tending to show that certain goods were fraudulently transferred to said French by Harter & Claus, and for the purpose of placing them beyond the reach of their creditors, and to defraud them, and that French had knowledge of such fraudulent purpose at the time he so received and pretended to purchase the same. That he had disposed of some of the goods so transferred by Harter & Claus at retail, and with the proceeds purchased other goods from divers third persons, and mixed the goods so purchased with those received from Harter & Claus and remaining on hand, and from the stock so intermingled defendants took the goods in controversy. Defendants further introduced evidence tending to show that on February 2, 1880, and for a long

time prior thereto, said Harter & Claus had been and still were debtors of Field, Leiter & Co., of Chicago, on account of merchandise purchased; that on January 7, 1880, said Harter & Claus failed, owing about $26,000, and showing assets in sight and in their own names of about $10,000, and failed in any manner to account for the proceeds of the French stock; that on the day of the alleged trespass Perry Reel was the acting and qualified sheriff of Pottawattamie county, and that defendant, Orrin Beswick, was his duly appointed and acting deputy at Avoca, in said county. They also produced evidence to the court that a certain writ of attachment theretofore issued from the office of the clerk of the circuit court of Polk county, Iowa, to the sheriff of Pottawattamie county, in an action therein, in which Field, Leiter & Co. were plaintiffs and Harter and Claus were defendants, also the return on said writ, had been and were lost. Thereupon the court permitted secondary evidence to be introduced concerning the existence and contents of said writ, as also the circumstances under which the defendants seized the goods in controversy; which evidence is as follows: Perry Reel testified: "I am the defendant and sheriff of this county. I saw a writ of attachment issued from the circuit court of Polk county and directed to me, in the case of *Field, Leiter & Co. v. Harter & Claus.* Under that writ we levied upon the goods in controversy. Mr. Beswick, of Avoca, had the matter in charge. I returned it to the clerk at Des Moines, Polk county, Iowa, by mail. I am not sure whether I received the writ from Mr. Beswick or Mr. Stevens. I don't know that I saw it prior to the time it was levied. I think I did not deliver the writ to Beswick personally, I may have sent it to him. I presume I read the paper. I am in the habit of looking them over; but I cannot now testify positively in regard to it. My best recollection is it was issued from the circuit court of Polk county, Iowa. I don't know whether I read all of it. I must have read enough to see what the amount of goods was that was to be levied on. I think I read enough

of the body of the paper to determine at least that it was a writ of attachment, and the amount of goods necessary for me to levy upon. I think it was at my office before it was levied, but don't think I then saw it. I saw the writ, but I can't say how it came to me, whether by mail from Mr. Beswick, or whether Mr. Stevens brought it. I can't remember date when I saw it. To the best of my recollection I inclosed it in an envelope myself for the purpose of returning to the clerk of Polk county. I think I made the return myself. I am pretty sure I deposited it in the post-office, but I will not be sure. I think I received a letter from the clerk. Can't remember name of clerk signing writ. My impression is it was Mr. Keyes, and that there was a change in the office about that time. Am not positive that paper was signed by Mr. Keyes. I cannot now recollect whether writ had a seal upon it. Don't know that I paid that particular attention to it, but presume I did. I have an indemnifying bond that I drew up from the writ of attachment, and from it I am able to state the amount of the writ and the date of issuing the writ, as I drew the bond with the writ before me. It also shows the parties. The writ was issued for $918.45, from the circuit court of Polk county, Iowa, on the twenty-ninth day of January, 1880, in a cause wherein Field, Leiter & Co. et al. were plaintiffs, and Harter & Claus were defendants. I examined the writ sufficiently to draw up this indemnifying bond from it. I think it was on a printed blank. I am almost sure that the facts recited in the bond were in the writ —the names of the parties—the amount—court from whence it was issued—but I don't remember the words of the attachment, of course. I don't know positively by whom it was signed. Was not acquainted with hand writing of clerk of Polk county, and personally could not say whether he signed it or not, because I did not see him sign it. I have no recollection of examining writ to see whether there was a seal on or not. The writ required me to make a levy. I put it in an envelope, addressed it to the clerk, and have not seen it since."

A. W. Stevens testified as follows: "I have heard the testimony with reference to the writ of attachment. I know about the writ of attachment having issued against Harter & Claus to the sheriff of Polk county, and one to the sheriff of Pottawattamie county: I brought this last one here and gave it to Mr. Reel in his office in this building. I arrived here in the evening. I supposed, of course, it should be delivered, and, not knowing of any deputy, I asked him to give me a deputy to execute the writ. He looked over the writ, and asked me where it was to be served. I told him at Avoca. He then said he had a deputy there, Mr. Beswick, and that he would send it to him. I told him I wanted it sent so as to have it levied the next day. It was then late, and he gave me the writ to take to Mr. Beswick, which I did. I was present when it was issued, as also when it was levied. The goods of Mr. French in controversy were taken under and by virtue of this writ of attachment."

The defendant also read in evidence a certified transcript of a judgment rendered by the circuit court of Polk county, July 27, 1880, in the case of *Field, Leiter & Co. v. Harter & Claus*, for the sum of $629.63, which recites that it appearing "that the allegations of fact constituting the cause of attachment as alleged in plaintiffs' petition were true, and that said attachment properly issued, it is, therefore, ordered and adjudged that plaintiffs have and recover of defendants, Harter & Claus," etc. "That a special execution issue herein for the sale of said attached property, to-wit, the personal property consisting of the stock of goods, merchandise, accounts, etc., levied on and taken as the property of defendants by the sheriff of Pottawattamie county, Iowa, under a writ of attachment issued herein to said sheriff, and that the same be sold," etc.

I. Upon the introduction of this testimony, the court instructed the jury as follows: "If you find from the evidence that the plaintiff was the owner of the goods at the time they were taken by defendants, that is, that he then held the title to them in his

1. FRAUDU-
LENT ming-
ling of goods:
burden to dis-
tinguish.

own right, the only other question that you will have to determine will relate to the amount of damages which plaintiff is entitled to recover on account of the taking of the goods by defendant. It is true that defendants have alleged that, if Harter & Claus in fact sold to plaintiff any portion of the goods which he had in the store at Avoca, such sales were made by them for the purpose of hindering and delaying their creditors in the collection of their debts, and that plaintiff made the purchases of them in the perpetration of such fraud. But in establishing this claim it is essential that they prove that the goods seized by them were in fact sold by Harter & Claus to plaintiff, and there is no evidence tending to prove this fact." The defendants assign the giving of this instruction as error. The appellee insists that this instruction is in harmony with, and justified by, *Rutledge v. Evans*, 11 Iowa, 287. We think, however, that the facts of this case, do not bring it within the principle of *Rutledge v. Evans*. In that case the plaintiff brought an action of replevin for twenty-two dry hides. The defendant claimed them under an execution against one Jenkins. To sustain his claim, the defendant offered to prove that Jenkins, being largely in debt, conveyed a stock of goods to Rutledge for the purpose of defrauding his creditors, and that the hides in controversy had been purchased with the goods, or the proceeds of the goods, which plaintiff had fraudulently obtained from Jenkins. It was held that this evidence was properly excluded. It is to be observed that it was not proposed to prove that any of the hides had been fraudulently obtained from Jenkins. In this case the abstract shows that evidence was introduced tending to show that French had disposed of some of the goods so transferred by Harter & Claus at retail, and with the proceeds purchased other goods from divers third persons, and mixed the goods so purchased with those received from Harter & Claus, and remaining on hand, and from the stock so intermingled defendants took the goods in controversy. It appears, therefore, that a portion of the goods in controversy are the identical goods

transferred by Harter & Claus to the plaintiff. To the extent of the value of the goods so transferred, the defendants should be protected, if the transfer was fraudulent. Besides, if French was the fraudulent grantee of the property, and he disposed of part of it, and bought other property which he mingled with that fraudulently conveyed to him, the burden of proof is upon him to furnish the means of distinguishing the property so mingled, or to prove its value. See *Stuart v. Phelps*, 39 Iowa, 14; 2 Kent's Commentaries, p. * 365. In our opinion, the evidence submitted does not justify the instruction under consideration.

II. The court also instructed the jury as follows: "It is also essential that they should prove, in establishing this claim, that they seized the goods on a valid writ of attachment against the property of Harter & Claus, and I am of opinion that they have not introduced sufficient evidence of this fact. And for these reasons I am of opinion that, if an actual sale of the goods was made to plaintiff and he purchased them in his right, we cannot now enter into any inquiry as to the *bona fides* of the sale." The giving of this instruction is assigned as error.

2. WRIT of attachment: presumption in favor of.

The defendants have proved with reasonable certainty that the goods in question were levied upon under a writ of attachment emanating from the circuit court of Polk County. They have also shown the date of the writ, the case in which it issued, and the amount of property which it authorized to be attached. The defendants have failed to prove the exact language of the writ, the name of the clerk who issued it, or that the writ was under seal. There is a legal presumption in favor of the due execution of papers emanating from a public office. Upon proof that the writ under which the defendants justify emanated from the Polk circuit court, its sufficiency as to form and seal, in the absence of any proof impeaching it, will be presumed. *McNorton v. Akers*, 24 Iowa, 369. In the giving of this instruction there was error.

REVERSED.

### OPINION ON REHEARING.

BECK, J.—I.   In an opinion heretofore filed, we held that the judgment of the district court ought to be reversed. Upon the petition of plaintiff a rehearing was ordered, and the cause was again argued both orally and in print, and has been again considered by the court.   In addition to the averments of the pleadings found in our former opinion, it is proper to state here that plaintiff alleges that he is the absolute owner of the goods in controversy, and the defendants aver in their answer that they were transferred to defendant by Harter & Claus without consideration, for the purpose, on their part and on the part of plaintiff, to defraud their creditors, among whom were Field, Leiter & Co., and that plaintiff was not a purchaser of the goods in good faith and for value, but held them in trust for the use and benefit of Harter & Claus.   It is not entirely clear that the abstract shows that all the evidence is presented therein, but, for our present purpose, it may be regarded as containing all the evidence submitted in the court below. Neither party claims that the abstract does not contain all the evidence.

II.   The instruction to the jury set out in the first point of our former opinion holds that there was no evidence tending to prove that the goods seized by the sheriff were sold by Harter & Claus to plaintiff.   This position seems to be based upon the ground that the evidence shows that the stock from which the goods were taken on the attachment contained "some" goods which had been purchased by plaintiff from the proceeds of goods sold out of the stock alleged to have been purchased of Harter & Claus.   The instruction under consideration is supported by counsel for plaintiff upon the following grounds, as stated in the printed argument:

"*Third.*—That when the plaintiff has *intermixed* the goods with others belonging to himself, the *bulk* cannot be levied upon, so long as those belonging to the different owners can be

distinguished. That in such a case the plaintiff in the writ, when sued, can defend only by showing a right to levy upon that *portion* of the goods fraudulently disposed of by his debtor, and if he took the *stock*, the burden is upon him to show in addition that the *intermixture* was done with intent to defraud, *and* that before removal the plaintiff was called upon to select his goods. That if he remove the goods without thus giving the plaintiff an opportunity to inspect them and to select his own, the burden of proof is upon him.

Cases are cited which seem to support this position. But it will be readily seen that counsel's position is not applicable to the facts of this case, where a *part* only of the stock was seized, not the whole stock. In the case contemplated by counsel's position, there is a presumption based upon a certainty that some goods were seized that had been added to the stock after the transfer. In this case no such presumption exists, for, in the levy of the writ, all goods seized may have belonged to the original stock. Nor does it appear that plaintiff at any time made claim that any part of the goods were purchased after he acquired the stock, or that the sheriff at the time of the levy had notice of plaintiff's claim as to the goods acquired subsequently to the transfer to him. In this case it appears to us that, as the sheriff is not shown to have made the levy with such notice, his levy upon the goods belonging to the original stock ought not to be defeated by the consideration of the possibility that he levied upon goods acquired after the sale to plaintiff. The *onus* rested upon plaintiff to show that the levy covered goods added to the stock after his purchase, for the reason that the facts were peculiarly within his knowledge, and could not have been known to the sheriff. Failing to introduce the evidence, the burden of which rested upon him, the presumption of law is against him, and to the effect that the goods levied upon belonged to his original stock. The question whether, if plaintiff should be found to be a fraudulent purchaser of the goods, he could hold other goods purchased with their pro-

ceeds exempt from seizure, or whether the goods so purchased could be seized by the creditors of the vendors, need not be decided in this case.

III. Upon the second point of our former opinion, it is only necessary to add that the judgment against Harter & Claus was introduced in evidence, wherein it is adjudged that the writ of attachment upon which the goods were seized was properly issued. The indebtedness of Harter & Claus is thus established, as well as the fact that a writ was issued. We entertain no doubt that the law will presume that it was regular in all respects. This presumption, with the evidence of its contents, set out in the first opinion, sufficiently establishes the issuing and contents of the writ. Besides, we think the court below must have found that the writ had issued, otherwise proof of its contents could not have been admitted. These considerations sufficiently answer other positions of plaintiff's counsel.

IV. We think the judgment of the district court should be reversed upon a ground not referred to in our first opinion. The instructions put the case to the jury as though defendants claimed that plaintiff held the goods as the agent of Harter & Claus. No such an issue is presented in the pleadings. The real issue involved the question whether plaintiff was a good faith purchaser for value. It is not fairly and clearly presented in the instructions. But, as the court held that there was no evidence showing that the goods in controversy were sold by Harter & Claus to plaintiff, possibly it was thought unnecessary to present the issue mentioned to the jury.

We adhere to the conclusion announced in our first opinion, and order the judgment of the district court to be

REVERSED.