ELMER CARPENTER ET AL. v. MARY E. LINGENFELTER ET AL.

FILED NOVEMBER 20, 1894. No. 5655.

1. **Trial:** WITNESSES: EVIDENCE. When a party on cross-examination asks a witness an immaterial or irrelevant question, he is bound by the evidence so elicited, and cannot rebut it by other witnesses.

2. **Accession of Property:** TITLE: TRESPASS: TROVER AND CONVERSION. "The doctrine of accession of property applies

where one has willfully, as a trespasser, taken the property of another, and altered it in substance or form by his own labor. Where, however, the appropriation was through a mistake of fact, and labor has been expended upon it which converts it into something very different from the original article and greatly increases its value, and the value of the original article is insignificant in comparison with the new product, the title to the property in its converted form will pass to the person who has thus expended his labor, the original owner to recover the value of the original article." (*Baker v. Meisch,* 29 Neb., 227.)

3. Trover and Conversion : VALUE OF PROPERTY : RECOVERY : REPLEVIN. The owner of property which has been taken by another in good faith, believing he had a right to do so, may recover the value of the property at the time of the conversion, and not the value after the same has been improved by the other's labor and skill.

ERROR from the district court of Pierce county. Tried below before ALLEN, J.

The facts are stated in the opinion.

*O. J. Frost, W. W. Quivey,* and *Wigton & Whitham,* for plaintiffs in error:

The court erred in giving the sixth and seventh instructions on its own motion and in refusing the first instruction requested by plaintiffs. (Cobbey, Replevin, secs. 395, 396; *Baker v. Meisch,* 29 Neb., 227; *Hungerford v. Redford,* 29 Wis., 345; Wells, Replevin, secs. 85, 88; *Gillespie v. Sawyer,* 15 Neb., 536; *Fremont Ferry & Bridge Co. v. Dodge County,* 6 Neb., 25; *Roy v. McPherson,* 11 Neb., 200; *State v. Graham,* 21 Neb., 329.)

In replevin, where a recovery of the value of the property is sought, the measure of recovery is the value before the property was improved by defendants' labor and skill. (*Single v. Schneider,* 30 Wis., 570; *Hungerford v. Redford,* 29 Wis., 345.)

*G. T. Kelley, J. B. Smith,* and *Frick & Dolezal, contra.*

NORVAL, C. J.

This is an action in replevin by Elmer Carpenter, John Carpenter, and I. W. Peed against Mary E. Lingenfelter and D. C. Lingenfelter, to recover the possession of 157 tons of hay. The property was taken under the writ, and possession thereof delivered to the plaintiffs. The defendants recovered a verdict and judgment for the value of the hay in the sum of $350, and $5 damages for withholding possession. The plaintiffs prosecute a petition in error.

The testimony introduced by the plaintiffs tends to show that one Hugh Spencer, who was the owner of the southwest quarter of section 28, township 27, range 3, in Pierce county, by his authorized agent, R. J. Spencer, rented the same to the plaintiff, I. W. Peed, for the year 1889, at a rental of $25; that in April, 1890, R. J. Spencer had a conversation with Peed about renting him the land for that year, in which conversation the former told the latter that if he would pay the taxes on the quarter section he could have the use of the land for 1890, and Peed replied that he would take the land if he could keep the cattle off; that subsequently Peed made a contract with one Kidd, by which the latter agreed to keep the cattle off the land ; that Peed also paid the taxes about October 1, the tax receipt being delivered to R. J. Spencer at his special request; that in June or July, 1890, Peed sublet the land to the Carpenters, they agreeing to cut the grass growing thereon, stack and bale the hay, and deliver to Peed one-half thereof on board the cars; that the Carpenters commenced cutting the grass and making the hay in controversy during the latter part of August, and had it all in stack by September 25th; that in November following, after they had baled a part of the hay, the defendants drove the plaintiffs off the land and took possession of the hay,—that which was baled, as well as the portion which was then in the stack. It further appears from the testimony that

R. J. Spencer rented the land upon which the hay was made, on or about the 21st day of August, 1890, to the defendant Mary E. Lingenfelter.   There is likewise in the bill of exceptions evidence tending to establish that Peed refused to take the land for 1890, upon the terms proposed by Mr. Spencer, and that although the defendants knew the Carpenters were cutting the grass, and making the hay early in September, no claim to the hay was made by the defendants until after it had been all stacked.

The first assignment of error is based upon the ruling of the trial court in admitting the evidence of D. C. Lingenfelter, to the effect that upon the trial in the county court of Pierce county of the case of the State v. Lingenfelter, Elmer Carpenter, one of the plaintiffs herein, testified that he did not know who was the owner of the southwest quarter of section 28, township 27, range 3.   This evidence was offered and admitted for the purpose of impeachment, by showing that Mr. Carpenter had testified differently in the county court from what his testimony was on the trial of this case concerning his knowledge of the ownership of the land upon which the hay in dispute was made.   Whether Mr. Carpenter knew, or did not know, who owned the land was not relevant to any issue in the case, since it in no manner tended to prove who had the right of possession to the property in controversy at the commencement of the action.   The Carpenters claim the right to the hay as sub-lessees from Mr. Peed, who it is insisted is the tenant of Spencer, the owner of the land.   The defendant Mary E. Lingenfelter claims under a lease from Spencer.   One of the main points in the case, and the one to which the testimony was largely directed, was whether Spencer had rented the land to Peed for the year 1890, and the testimony above referred to sheds no light whatever upon the subject.   It is only as to matters relevant to some issue involved in a case that a witness can be contradicted for the purpose of impeachment.   This rule is too well settled to

require the citation of authorities to sustain it. Another familiar rule of evidence is that when a party is permitted on cross-examination to ask a witness an immaterial question, he is bound by the evidence so elicited, and cannot rebut it. The statement made by the witness which it was sought to contradict by other witnesses was brought out by the defendants upon cross-examination. It follows that it was error to allow the defendants to introduce evidence to impeach Elmer Carpenter upon a matter collateral to the issue involved. For the reasons stated above it was likewise error to admit immaterial evidence offered by the defendants for the purpose of impeaching the witness John Carpenter.

Exceptions were taken to the giving of the sixth and seventh paragraphs of the court's charge to the jury, and in the refusing to give plaintiffs' instruction No. 1. For convenience these instructions will be considered by us at the same time. The sixth and seventh instructions given by the court on its own motion are as follows:

"6. To constitute a valid contract the parties thereto must have agreed upon the same thing, and in the same sense, and must not have left the matter open for future agreement. If you find from the evidence in this case that I. W. Peed and R. J. Spencer made and entered into a contract by the terms of which Peed became the lessee of the land described in the petition for the purpose of the hay and grass grown thereon in the year 1890, and thereafter Peed and the plaintiffs, John and Elmer Carpenter, made a contract by which the latter were to cut and bale the hay and grass growing on the said land for that year, and the parties to such agreement were to own the same jointly, and in pursuance to such last named contract the plaintiffs, John and Elmer Carpenter, did cut and bale said hay and grass, then the plaintiffs would be the owners of the hay and entitled to its possession, and you should so find by your verdict. If, however, Peed did not contract

for the land for the year 1890, or the hay and grass grown thereon that year, with R. J. Spencer, or any other person having authority to contract with reference thereto, then any agreement that Peed may have made with John and Elmer Carpenter with reference to the hay and grass grown on said land for that year would not confer upon the plaintiffs any title to, or right of possession of, the hay, and your verdict should be for the defendants.

"7. If you find from the evidence that R. J. Spencer, having authority to do so, leased the land described in the petition for the purpose of the hay and grass grown thereon in the year 1890, to the defendant Mary E. Lingenfelter, through her husband as her agent, and that no lease of said premises had been previously made for said year to I. W. Peed, your verdict should be for the defendants."

The following is the plaintiffs' request to charge, and which was refused by the court:

"1. If you shall find from the evidence that I. W. Peed claimed to be the owner of the grass which has been converted into the hay in controversy, and the plaintiffs, under the contract with said Peed, cut said grass and converted the same into hay in the stack or bales, and by the bestowal of such labor thereon greatly increased the value of the grass, and that such work was done in good faith, believing that Peed was the owner of said grass when they made said contract with him, and while performing said labor and manufacturing said hay, then your verdict will be for the plaintiffs."

The vice imputed to the court's charge quoted above is that plaintiffs' right to recover was by the rule announced by the court made to depend wholly upon whether Spencer leased to Peed for the year 1890 the premises upon which the hay in question was made. Plaintiffs' right to the possession of the hay was not based alone upon the fact that a contract of lease had been made between Peed and the owner of the land, but as well upon the fact established

by the evidence that they had entered upon the premises as the lessees of Peed, honestly believing that he had the right to make such lease, and in good faith cut the grass and made the same into hay, with the knowledge of the defendants and without any objection or protest on their part, until after the work was done. This feature of the case was entirely withdrawn from the consideration of the jury by the instructions given. An important inquiry, therefore, is whether the charge of the court was for that reason erroneous. Ordinarily, a change in the form of property, by a person other than the owner, will not have the effect to change the title, but the original owner may sustain replevin if the property is susceptible of identification, unless the change has been wrought in good faith by an innocent party, who, by his labor and skill bestowed thereon, has greatly increased its value. But where a chattel, taken by a willful trespasser, is enhanced by his labor and skill, the manufactured article belongs to the owner of the original material, and he may recover possession by replevin. The rule stated above is in conflict with some adjudications which may be found, but is supported by the weight of authority in this country and is in accordance with the principles of natural justice. The same doctrine was held and applied by this court in the case of *Baker v. Meisch*, 29 Neb., 227. That was an action for replevin to recover a quantity of brick manufactured by the defendant from clay belonging to the plaintiff. The defendant entered upon the land and manufactured the brick in good faith under a lease from one Palmer, who never owned the land, but who claimed to be such owner. There was judgment for the defendant in the trial court, which was affirmed by this court. We quote the third point in the syllabus: "The doctrine of accession of property applies where one has willfully, as a trespasser, taken the property of another, and altered it in substance or form by his own labor. Where, however, the appropriation was through a

mistake of fact, and labor has been expended upon it which converts it into something very different from the original article and greatly increases its value, and the value of the original article is insignificant in comparison with the new product, the title to the property in its converted form will pass to the person who has thus expended his labor, the original owner to recover the value of the original article." Mr. Cobbey, in his book on the Law of Replevin, at section 393, says: "If a person bestows his labor upon the property of another, thereby changing it into another species of article, the property is changed, and the owner of the original material cannot recover the article in its altered condition, but is only entitled to its value in the shape in which it was taken from him. It is not essential that it remain in its original form so long as it can be identified. But if the change has been wrought in good faith by an innocent party, and it has been materially increased in value, or has become incorporated with another thing, which is the principal and it is only a part, replevin would not be allowed." The author cites numerous cases which sustain the text. The same doctrine is laid down in Wells on Replevin, in section 216, and at section 217 Mr. Wells, in discussing the duty of the owner to reclaim his property before its value has been greatly enhanced by the labor of another, says: "The rule in Wisconsin seems to commend itself, as well for its plainness as for the manifest justice which it seems to deal out to all parties. It is there held that the owner of chattels does not lose his property by mere change of form at the hands of another, but he should reclaim it before the new possessor has greatly increased its value by the bestowal of his skill and labor; and, in event of his failure to do so, he should be restricted in his recovery to the amount of damages he has actually sustained, unless the taking was accompanied with some circumstances of malice or insult that might make it proper to inflict exemplary damages. This rule, while it

protects the owner fully, will be easy of application, and do justice to both parties, when such a result is attainable. In Michigan a somewhat similar doctrine prevails. When timber worth twenty-five dollars had, by one in the exercise of a supposed right, in good faith, been converted into hoops worth seven hundred dollars, it was held that the title passed to the party who had in good faith expended his labor, and the owner of the timber in such case could not sustain replevin for the hoops. In Pennsylvania, the plaintiff sought to recover, in trover, the value of coal dug out of his mine by mistake, and was allowed only the value of the coal before it was mined. The court says: 'It is apparent that any other rule would transfer to the plaintiff all the defendant's labor in mining the coal, and thus give her much more than compensation for the injury done,'" There is ample evidence in the record before us tending to establish that the Carpenters entered upon the land under claim of right, and in good faith cut the grass thereon, and made the same into hay, believing they had a right to do so, and that the defendants made no effort to stop them or to reclaim the hay before it was all made. In view of this evidence, we think it clear, under the authorities, that the instructions given by the court were erroneous and prejudicial to the rights of the plaintiff. Plaintiffs' request to charge was applicable to the evidence, and should have been given.

Upon the subject of the measure of damages the court instructed the jury substantially that inasmuch as the hay had been taken and delivered to the plaintiffs under the order of replevin and had since been sold and disposed of by them, the measure of the defendants' damage, in case a verdict should be returned in their favor, would be the highest market value of the hay which the evidence disclosed it possessed between the time it was replevied and the date of the trial. There is a conflict in the adjudicated cases as to the rule of damages where one's property has been

changed in form by another. There is one line of cases which holds that where the value of property has been increased by another the owner may recover the value of the property in its improved and more valuable form. There is another line of decisions which states the rule broadly that the measure of the recovery is the value of the article before the same was improved by the other's labor and skill, and this whether the value was increased by a willful wrong-doer or by a person acting in good faith. The last rule seems to us the better one. It gives the owner full compensation, and to the other party the increase of value for his labor bestowed on the property. (*Single v. Schneider*, 24 Wis., 299, 30 Wis., 570; *Hungerford v. Redford*, 29 Wis., 345; *Herdic v. Young*, 55 Pa. St., 176; Cobbey, Law of Replevin, sec. 913; *Wetherbee v. Green*, 22 Mich., 311.)

For the errors already pointed out the judgment is reversed and cause remanded.

REVERSED AND REMANDED.