LOUIS RICHTMYER, APPELLEE, V. MUTUAL LIVE STOCK
COMMISSION COMPANY, APPELLANT.

FILED JANUARY 22, 1932.   NO. 27867.

*Crofoot, Fraser, Connolly & Stryker,* for appellant.

*Daniel J. Gross* and *Ivan D. Evans, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ.,
and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

This action is by the plaintiff, appellee, for the conversion of certain cattle which were stolen from his ranch in Cherry county; and its object, to recover the value of the cattle from the defendant, which as a live stock commission merchant, some seven days after the theft, received the cattle at Omaha on shipment from the thief, and sold them in the usual course on the market.

In the briefing and submission of the case in this court, all assignments of error are eliminated except the one which involves the proper measure of damage to be applied in the case.

The defendant contends that, the jury having found for plaintiff upon the identity of the cattle, it is liable to plaintiff in some amount, as having handled and disposed of the stolen property, but insists that the value for which it may be held to account is that in Omaha where it received and dealt with the property. It claims to have acted innocently and in good faith, without knowledge of the prior theft and conversion; and this fact is conceded by plaintiff, who states in his brief: "We wish to make it clear that we do not charge the defendant with any culpability."

The plaintiff contends, and the trial court adopted the theory, that the proper measure of damage was the value of the cattle in Cherry county at the time of the original taking by the thief, with interest from that date. Evidence was either received or excluded in the trial in accordance with that theory, and the jury were so instructed.

The cattle were pure bred registered Herefords, valuable for breeding purposes. They were sold on the market as ordinary beef cattle, netting the shipper some $1,000. Their value as pure breds in Cherry county is amply sustained by the evidence at $3,500, which the jury found. The defendant was not permitted to show the value of such cattle at Omaha.

Both parties concede that the general rule for the measure of damages for conversion is the value of the property at the time and place of conversion, with interest from that date. Here they part company, however, and each seeks to apply that statement, as an unbending and all-inclusive rule, to the facts of his own case. Plaintiff urges that his loss occurred at the original taking, and that this unalterably fixes the time and place governing the value to be allowed, regardless of the remoteness of time or place when and where they came into possession of defendant, or of the innocence or culpability of the defendant, who had no part in the original taking and became liable solely by having, in the usual course of business, handled and disposed of the stolen property, and regardless also of the condition or value of the property at the time defendant came into possession.

Plaintiff further urges that, in receiving the cattle consigned to it by the thief, defendant became the agent of the thief and so liable in the same measure as would be the original taker as principal; and that the taking of the cattle by Gross, his shipment of them to defendant at Omaha, and their subsequent sale and remittance of the proceeds were all consecutive steps in the conversion, the sale by defendant being merely the completion of the acts that constituted the conversion. The infirmity in this argument so far as concerns plaintiff's case is that it proves too much to result in any strengthening of plaintiff's position. For, if these were successive steps in the one conversion and the final sale the completion thereof, it necessarily follows that it, being made in Omaha, the time and place of that act, as well as the acts in Cherry county, must be considered in the application of the rule of damage. There is some merit in defendant's argument that it should not, as agent, be chargeable with acts of which it knew nothing, and which took place before any agency was, or under the facts in this case could have been, created.

That the general rule hereinbefore stated of the measure of damages for conversion is the law of this state, there can be no doubt. 26 R. C. L. 1147, sec. 61; 26 R. C. L. 1148, sec. 63; *Bennett v. McDonald,* 59 Neb. 234; *Woodworth v. Hascall,* 59 Neb. 124; *Halbert v. Rosenbalm,* 49 Neb. 498; *Kasper v. Walla,* 49 Neb. 288; *Carpenter v. Lingenfelter,* 42 Neb. 728; and many other cases.

It does not follow, however, that it is so unyielding and all inclusive that no account should be taken of the facts attendant upon the conversion, the entrance of defendant into the zone of liability, or the location or condition of the property at that time. Courts have often considered the condition of the converted property as it came into the hands of the defendant, and, upon comparison with its condition when originally taken, modified the measure of damage as it is hereinbefore stated. This has generally occurred in cases wherein the property had been increased in value by some process of trade or manufacture. In

some instances the plaintiff was awarded the value as increased, upon the ground that it was made by the wrongdoer himself who should not be permitted to thus profit by his own act and in effect compel an involuntary sale by plaintiff. *Wooden-Ware Co. v. United States,* 106 U. S. 432. In *Pine River Logging & Improvement Co. v. United States,* 186 U. S. 279, it is said: "The cases involving this distinction and in line with the *Wooden-Ware* case are abundant, both in the federal and state courts, and are too numerous even for citation."

In many cases the courts rest a distinction upon the ground that the defendant, not being an intentional wrongdoer, came innocently into possession of the property, and allow the defendant credit for any increase in value contributed by him, although holding him to account for the condition of the property as it came into his hands. *Winchester v. Craig,* 33 Mich. 205; *Railway Co. v. Hutchins,* 32 Ohio St. 571, 30 Am. Rep. 629; *Silsbury v. McCoon,* 3 N. Y. 379; *Stuart v. Phelps,* 39 Ia. 14. In *Ellis v. Wire,* 33 Ind. 127, 5 Am. Rep. 189, it is said: "The sale of the wheat was its actual conversion by the defendant, and its value at that time, in the form in which he sold it, was the measure of damages, if the plaintiff was content therewith; though we think he was entitled to the highest price of the property at any time between the taking and the sale."

This court, as stated in the opinion by Letton, J., in *Clay v. Palmer,* 104 Neb. 476, has adopted a slight modification of the rule in *Wooden-Ware Co. v. United States,* 106 U. S. 432, and follows that of *Carpenter v. Lingenfelter,* 42 Neb. 728, to the effect that the original value only is to be given the owner, regardless of whether the increase was made by a wilful wrong-doer or by one in good faith.

In *Potter v. United States,* 122 Fed. 49, Sanborn, J., in discussing the matter of damages and the bad or good faith of the purchaser who had been sued, says: "The measure of damages for the conversion by an innocent purchaser from a wilful trespasser is the value of the property converted at the time of the purchase."

A number of Nebraska cases, in addition to those herein noted, have been cited in the briefs of counsel. None of them determine a situation as between the owner and an unintentional wrong-doer. They all were suits against the original wilful trespasser. No case has been cited to us which involves a decrease in the value of the property after the taking or at the time it reached the hands of defendant who is called upon to account, and a rather diligent search has failed to discover any judicial determination of that question.

Examination of the precedents does disclose, however, that the inquiry as to the value of the converted property is by no means limited to the immediate time or place of the original taking, but is to be governed largely by the facts of the particular case on trial. Whatever distinctions may be drawn by or from the *Wooden-Ware* case, and later adjudications by that court, they do approve inquiry as to value at a time and place more or less remote from the original taking. The same is true as to the cases cited from Michigan and Indiana, and is recognized in *Wallingford v. Kaiser,* 191 N. Y. 392, 123 Am. St. Rep. 600. In *Alexander v. Swackhamer,* 105 Ind. 81, 55 Am. Rep. 180, the court recognized the act in which the defendant actually participated, after the original taking, as constituting the ground for recovery. Alexander & Company innocently came into possession of cattle which had been fraudulently obtained from the owner. The court say: "When therefore Alexander & Company sold the cattle, they sold the property to which the plaintiff had a perfect title, and when they received the proceeds of such sale they received money which belonged to the plaintiff. This amounted to a conversion of the plaintiff's property for which they were liable." And although the value of property at the time of conversion is generally the measure of damage in such cases, to ascertain that value, however, evidence of its worth a reasonable time prior and subsequent to the conversion is admissible. *Austin v. Vanderbilt,* 48 Or. 206, 120 Am. St. Rep. 800. See 26 R. C. L. 1147, sec. 61.

The court must consider here the rights of the two parties, each without culpability, in relation to the facts upon which the case rests. The plaintiff should of course have full recovery for the loss at the time sustained; and so he would if his suit ran against the original taker. The original taker is not a party to this action. The defendant became unwittingly involved by the circumstance of having dealt with and disposed of the property. If the property was of less value when and where defendant got it, one of two innocent parties must suffer loss. A fixed rule of law for the protection of property owners puts upon one so dealing with stolen property the duty, no matter how innocently he dealt, to account to the true owner for its value. Upon what theory of substantial justice can either of these be entitled to preferential treatment at the hands of the court? Upon what theory of right shall the defendant, without culpability itself, but bound nevertheless to render to the true owner the value of the property in which it dealt, be required to submit to an additional penalty for the wrongful act of another in which it had no part? It is presumed of course to know the value of the property in which it dealt at the time and place it got it, and to take the risk of dealing with the lawful owner; but by what just means can it be held further chargeable with knowledge of, or liability for, an additional value that it could not see and did not know, and which was not in fact then in the property?

This all leads to the conclusion that in such cases "the time and place of conversion" to be considered, and which controls on the question of value, is that fixed by the acts of the defendant in its dealing with the property, rather than the original taking in which defendant had no part. The trial court was in error in excluding evidence as to the value of the property at Omaha, and in instructing the jury that the value in Cherry county on the date of the theft was the only value to be considered. This gives to the plaintiff full compensation for his loss in so far as the defendant had any connection with it, holds de-

fendant responsible for the full value of that .in which it dealt, without attaching additional penalty for the acts of another, and seems to us a just and salutary rule.

It is not to be understood, however, that the value of the property in Cherry county, so recently before the conversion by defendant, becomes immaterial in the case. The limits of the inquiry should not in this case be so confined. The value there at that time might well tend to show the value on shipment to Omaha. Also whether the cattle in question were pure breds or only beef cattle was one of the issues in the case. We judicially know the relative location of the counties and cities in the state and approximate distances and the general routes of travel; and that Omaha is the principal live stock market in the state and probably the one most accessible from Cherry county. It seems reasonable that in this investigation the values at either place would be relevant in fixing the actual value of the property at the time and place of the acts of the defendant in relation thereto.

For the reasons stated, the judgment of the district court is reversed and a new trial awarded.

REVERSED.