## GUESS et al. v. MONTAGUE.

### No. 763.

District Court, E. D. South Carolina, Columbia Division.

Dec. 4, 1942.

62

W. K. Charles, of Greenwood, S. C., for plaintiffs.

Lee & Moise and John D. Lee, all of Sumter, S. C., for defendant.

TIMMERMAN, District Judge.

This action was brought by twelve plaintiffs under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., to recover wages alleged to be due each of them respectively for either regular time or overtime, or for both.

It is alleged in the complaint, but denied in the answer, that the defendant during the periods mentioned in the complaint "employed plaintiffs in the production of goods for interstate commerce and has failed and refused to compensate plaintiffs for such employment" at rates prescribed by Section 6 of the Act (par. 6); that "during such periods defendant employed plaintiffs in the production of goods for interstate commerce for certain work weeks longer than" those prescribed by the Act (par. 7); and "failed and refused to compensate each of them for such employment in excess" of the prescribed hours "at a rate not less than one and one-half (1½) times the regular rate at which each was employed * * * in violation of Section 7 of the Act" (par. 7).

The complaint further alleges, "That at the times * * * mentioned, the defendant operated * * * a plant engaged in selling supplies, buying, selling and trading of saw mills, saw mill equipment, in the building and rebuilding of machines, machine parts, boilers, steam engines, tractors, farm implements and other machinery of like kind and character. The goods and articles so manufactured and produced by the defendant are shipped in interstate commerce and have been sold, offered for transportation, transported, shipped and delivered in interstate commerce * * *" (par. 4).

In answer to paragraph 4 of the complaint, just quoted, the defendant alleges, "that the business operated by him * * * is a retail or service establishment, the greater part of whose selling or servicing is in intrastate commerce within the meaning of Section 13(a) (2) of the Fair Labor Standards Act of 1938, and that the business is, therefore, exempt from the provisions of Sections 6 and 7 of said Act" (par. 2).

In further answer to the complaint, the defendant alleges, that, notwithstanding his exemption from the operation of the Act, he paid the plaintiffs Guess, Jones, Rodrigue and Weathersbee, respectively, after the termination of their employments the sums of $199.37, $70.34, $68.44 and $176.49, and took their receipts therefor in release and settlement of any claims said plaintiffs had against the defendant (par. 3).

At a pretrial conference, October 26, 1942, it was stipulated that the amounts so paid were the exact sum claimed by Guess and slightly in excess of the respective sums claimed by the other named three plaintiffs for overtime, it being conceded that each of said plaintiffs had received full payment for regular hours of work.

As to the plaintiff John Rodgers, a minor, the defendant alleges that he was employed as an apprentice and that, notwithstanding the Act did not apply, the defendant had paid him at the rate of one-half the minimum wage prescribed by the Act and that, after the termination of said plaintiff's employment, the defendant had paid him and his natural guardian the sum of $29.82 as claimed overtime and had received from him and his said guardian a receipt therefor (par. 3).

As to the remaining plaintiffs the defendant alleges that none of them were engaged in commerce, or in the production of goods for commerce, and further that they were partly engaged in farming operations (par. 5).

The cause came on for trial before the Court and a jury on November 23, 1942. After the close of the plaintiffs' testimony in chief, the defendant moved for a nonsuit. The motion was refused without prejudice. At the close of all the testimony the defendant moved for a directed verdict in his favor on substantially the same grounds stated in the motion for the nonsuit. The plaintiffs also entered a motion for directed verdicts in their favor. The grounds upon which the respective motions were rested are as follows:

For the Defendant:

"1. That the defendant is not engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act.

"2. That the defendant's business is a retail and service establishment within the meaning of said Act and as such is exempt from the wage and hours provisions of the Act.

"3. That even if defendant's business is covered by said Act the colored plaintiff employees were not engaged in commerce or in the production of goods for commerce, and further that even if any of the said colored plaintiff employees were partly engaged in commerce or in the production of goods in commerce within the meaning of the Act, they have failed to show by definite and certain evidence the number of hours that they were so engaged and the amount of wages due them respectively.

"4. That all the plaintiff employees have been paid all wages due them under the Act, if any, and have accepted the same and in consideration of such payment they have executed binding and valid releases of any and all other claims accruing under the said Act and cannot now recover in this action."

For the Plaintiffs:

"1. That all of the testimony shows conclusively that the plaintiffs were engaged in interstate commerce as declared and interpreted by the Courts in applying the provisions of the Fair Labor Standards Act.

"2. That defendant's records show that each of the plaintiffs worked hours each week in excess of the minimum hours set

forth in the F. L. S. A. and were not paid wages as therein provided.

"3. That none of the defendants were employed in a retail or service establishment as defined by law.

"4. That the releases executed by plaintiffs, excepting Rodgers (who did not sign one) are void for the reason that the said employees were not paid the full amount due under the Act.

"5. That plaintiff John Rodgers, a minor, cannot be treated as an apprentice for the reason that a certificate of apprenticeship was not first obtained as required by the Act.

"6. That Defendant, having attempted to settle his liability to plaintiffs under the Act by taking a release, has acknowledged his coverage and is therefore bound by an admission against interest.

"7. That defendant, not having maintained a segregation in departments of inter and intra-state commerce as required, the plaintiffs, from admitted testimony, working most of the time at defendant's place of business, are entitled to coverage for entire time."

After listening to full arguments on the motions, out of the hearing of the jury, the motion of the defendant was granted, and the motion of the plaintiffs refused.

The reason for the action taken will now be stated.

Testimony came from many witnesses and the Court was occupied the better part of two days hearing it. A complete review of the evidence will not be attempted, but the conclusions drawn therefrom will be stated.

The crucial question as concerns all of the plaintiffs is, whether the defendant was operating a retail or service establishment within the meaning of Section 13(a)(2) of the Act. Then, there is the collateral issue, as applied to the first four named plaintiffs, of whether or not an employee may claim "liquidated damages" as a matter of right notwithstanding he had been paid the full amount claimed by him as wages under the Act before any controversy thereabout arose. The question first stated will be dealt with first.

The defendant's contention throughout the case has been, as stated above, that he runs a retail and service establishment the greater part of whose servicing and selling is in intrastate commerce; and that he was not engaged in commerce or in the production of goods for commerce in the sense of the Act during any of the periods in question. The plaintiffs' contention, as stated by counsel during argument on the motions, was that their right to recover is dependent upon the proposition that the defendant was engaged solely in interstate commerce in the sense of the Act.

As shown above the plaintiffs allege that the defendant was engaged in buying and selling supplies, saw mills and saw mill equipment, and in building and rebuilding machines and machine parts, boilers, engines, tractors, farm implements, etc., and in shipping the same in interstate commerce. The only reasonable conclusion to be drawn from the evidence is that the defendant ran a local general repair shop, servicing engines, boilers, saw mills, tractors, trucks, cotton gins, farm implements, and the like for such customers as brought or sent their machinery to him for repair. Likewise the testimony establishes that the defendant maintained a general sales stock of machinery, implements and supplies, ranging in retail sales value from 5¢ up to $1,000 or more, from which he sold to individual customers; and further that he on occasions took orders for articles not in stock and had them shipped directly to customers who purchased from him at retail prices. There is no evidence indicating that the defendant operated a wholesale establishment, that he was a manufacturer, or that he sold machinery, appliances or supplies in bulk to others for resale by them. It is true that the defendant sold a few customers out of the State, but this character of business represented less than 5% of his total sales. It further appears that this small part of defendant's total business was handled almost exclusively by his son who was Manager of the business; that much of the machinery and supplies so sold never reached the defendant's place of business where the plaintiffs worked; that they had no connection therewith, although such transactions were recorded on defendant's books; and that the plaintiffs had slight, if any, knowledge of such transactions before the records of the defendant were made available to them for the purposes of this case after it had been instituted.

■ It is worthy of note that the Act, while defining many of its terms, does not define either the term "retail" or the term "service". It is to be presumed, therefore,

that the Congress used such words in the senses in which they are used in ordinary trade or commercial transactions.

 As thus construed, and as stated by Judge Holmes in White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92, 93, the word retail "means a sale in small quantity or direct to the consumer, as distinguished from the word wholesale, meaning a sale in large quantity to one who intends to re-sell." It may be added that in commercial circles the terms retail and wholesale convey distinct and entirely different meanings. A retail price is the price that the ultimate consumer is expected to pay, and a wholesale price is that price which the retailer pays in the expectation of obtaining a higher price by way of profit from the ultimate consumer. I am convinced, and so hold, that the only reasonable inference to be drawn from the evidence is that the defendant operated a retail establishment, the greater part of whose selling was in intrastate commerce.

██ The plaintiffs rest their claims for additional compensation and for liquidated damages, one or both, upon the allegation that they were employed by the defendant "in the production of goods for interstate commerce", although there is no evidence reasonably warranting the inference that the plaintiffs, or any of them, were engaged in the production of goods for commerce. Swift & Co. v. Wilkerson, 5 Cir., 124 F.2d 176.

 The term "service establishment", as used in the Act, undoubtedly has reference to a business in which the owner thereof renders some character of service at an established location, to members of the general public, in consideration of a charge to be made therefor. Establishment is undoubtedly used in the sense of a business. However, it is not every business that falls within the exemption. To be exempt the business must be one where service is rendered to others as a general business of the owner thereof and not merely some service which is purely incidental to another character of operation. The word service, like many other English words, has many meanings. In determining the sense in which the word is used resort must be had of necessity to the context. Here there can hardly be any escape from the conclusion that the sense in which the word service was used in the Act is that of supplying labor or skill for the benefit of others as a business, such as was the case in the instant controversy. Since the defendant was operating a service establishment the greater part of whose servicing was in intrastate commerce the Fair Labor Standards Act is not applicable and the plaintiffs' case must fail.

 As to the second question stated above,—whether an employee may claim "liquidated damages" notwithstanding he had been paid in full all wages due him before any controversy thereabout was raised—it is my opinion that such an action will not lie in the absence of some proof that the employer was seeking some advantage, or trying to evade compliance with the Act, or was indifferent to the obligations created by the Act. In the instant case it appears that the employer has consistently taken the position that the Act was not applicable to him, but that notwithstanding this view and in order to avoid a suit or suits, he voluntarily paid certain of his employees in accordance with the standards of the Act and took their receipts therefor. It is true that these payments were not made on regularly scheduled pay-days, but they were made voluntarily before any controversy arose between him and his employees, the plaintiffs in this case, about their rate of pay or the number of hours worked by them, and before any demand had been made on the defendant for such payment.

For the reasons stated a verdict was directed in favor of the defendant, and a judgment may be entered thereon.