ALLEN, Appellant, v. LINE, Respondent

(34 N. W.2d 835.)

(File No. 8974. Opinion filed December 2, 1948)

**Lacey & Perry,** of Sioux Falls, for Appellants.

**Bailey, Voorhees, Woods & Fuller,** of Sioux Falls, for Respondent.

ROBERTS, P. J. It is the claim of the plaintiff that this is an action for money had and received. Plaintiff in his amended complaint alleges that he purchased from defendant 1,285 lambs; that "defendant agreed to feed and sell said lambs for the use of the plaintiff"; and that defendant owes a balance of $7,394 to the plaintiff as a result of the transaction. By his answer defendant alleges that he fully performed his part of the agreement and counterclaimed for $2,701.48. On motion of the defendant and after waiver of the counterclaim, the court directed a verdict and entered judgment dismissing the action, from which judgment plaintiff appeals.

The record discloses that on or about October 3, 1945, defendant sold and delivered to plaintiff approximately 1,285 lambs. The purchase price including trucking and commission charges was $9,527. Plaintiff executed his note to the Sioux Valley Bank for this amount secured by a chattel mortgage on the lambs and endorsed by the defendant. These lambs were taken care of by plaintiff on a farm seven miles northeast of Sioux Falls from the time of the delivery to him until on or about November 24, 1945, at which time about 700 lambs were removed to defendant's feed lot. The parties hereto and the bank entered into an agreement reading in part as follows: "This agreement, made this 28th day of January, 1946, by and between the Sioux Valley Bank of Sioux Falls, South Dakota, party of the first part, and R. Q. Line of Sioux Falls, South Dakota, party of the second part and George Allen of Sioux Falls, South Dakota, party of the third part. * * * It is further agreed, that the party of the second part will care for and feed approximately 700 of said lambs at his own feed lot and that the cost of all labor and feed for feeding said approximately 700 lambs is to be charged against the party of the third part; that any loss sustained will be the obligation of the party of the third part. It is further agreed, that the balance of said lambs are to (be) held by the party of the third part and fed and cared for by said party until they are ready for market, and that all feed furnished by the party of the second part shall be paid for out of the proceeds of the sale or subsidy of

said lambs. It is further agreed that when the said lambs shall be sold that the sale shall be made and check or draft received for said lambs made payable to the three parties herein; and any amount received for said lambs when the same are sold over and above the amount of the $11,000 obligation now due the Sioux Valley Bank shall be due and payable to the party of the second part until the full amount due said party of the second part shall be paid; that after the full payment of the party of the first part and the party of the second part, any balance received from the sale of said lambs or subsidy shall be paid to the party of the third part. That if there is any feed, including grain or hay or any other kind of feed on hand that has been charged to the party of the third part when said lambs are sold, all of said feed shall be the property of the third party and shall be turned over to the party of the third part." On or about March 15, 1946, plaintiff delivered the lambs remaining in his possession to defendant's feed lot.

The record shows that the notes given to the bank to finance the purchase and feeding of the lambs amounting with interest to $11,490.94 were paid as provided in the contract. The amount accounted for by defendant from the sale of 1,072 lambs marketed between May 8, 1946 and July 15, 1946, and wool and subsidy payments was $19,246.97.

There is no dispute concerning the amounts expended by defendant under the terms of the contract. According to an itemized statement furnished by the defendant, he expended $11,540.51 and upon this amount he credited $1,093 advanced by the bank. From this it would appear, and it is so claimed by defendant, that the venture resulted, not in a profit, but in a loss.

 It is first urged that the motion for directed verdict should have been denied for the reason that the grounds therefor were not specifically stated. The denial of a motion for a directed verdict is not reviewable when the motion fails to specify the particulars wherein the evidence is claimed to be insufficient. Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; Goldberg v. Sisseton Loan & Title Co. et al.; 24 S. D. 49, 123 N. W. 266, 140 Am. St. Rep. 775;

Yeager v. South Dakota Central Railway Company, 31 S. D. 304, 140 N. W. 690. A trial court, however, may direct a verdict on its own motion. If a verdict may be directed in the absence of a motion, it is not reversible error to grant a motion which does not state the specific grounds upon which it is based.

This brings us to the second contention of the plaintiff. That contention is that defendant converted the lambs belonging to the plaintiff and accounted for the sale of other lambs which were lighter in weight. It is the theory of the plaintiff that while conversion is a tortuous taking of another's property there is an implied contract in law to return the property to the rightful owner and that the owner waiving the tort may maintain an action for money had and received where the property has been converted into money or its equivalent. In opposition to this, defendant argues that the evidence does not show conversion and does not establish the retention by the defendant of any money belonging to the plaintiff.

■■■■ The substance of plaintiff's claim is that defendand was in effect a bailee; that his dealing with the property was inconsistent with and in violation of the bailment contract and amounted to a conversion; that plaintiff made out a prima facie case sufficient to go to the jury by proof of the bailment, the delivery of the property to the bailee and his violation of the bailment contract; and that the case at bar falls within the class of cases illustrated by Fryer v. Cooper, 53 S. D. 286, 220 N. W. 486. That case supports the broad rule that a prima facie case of conversion is made out him and cannot be returned and that it is then incumbent upon the bailee to go forward with the evidence. Conversion of property by a bailee may be committed in two ways: (1) By acts in derogation of bailor's title; and (2) by acts in derogation of bailor's possessory rights. 6 Am. Jur., Bailments, § 150. The evidence reveals that the parties entered into a written contract. It is apparent that the parties agreed and intended to authorize defendant to sell and part with the possession of the lambs when they were marketable. The evidence viewed most favorably for the

plaintiff fails to show a denial of plaintiff's title or a violation of his possessory rights in the property. It cannot be doubted that defendant owed a duty to account, but there is no evidence in the present case from which it might be found that defendant has received and has in his hands moneys, belonging to the plaintiff, which it is his duty to pay over.

The motion for directed verdict in favor of the defendant was properly granted and the judgment entered pursuant thereto is affirmed.

All the Judges concur.