MAPLEDGE CORPORATION, A MAINE CORPORATION, ET AL., APPELLANTS, v. J. B. COKER ET AL., APPELLEES.

93 N. W. 2d 369

Filed December 5, 1958. No. 34446.

*Viren, Emmert, Hilmes & Gunderson,* for appellants.

*Crawford, Garvey, Comstock & Nye,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

CARTER, J.

This is an action to recover from the defendants the value of a quantity of bowling pins alleged to have been converted by the defendants to their own use. The verdict of the jury was for the defendants and the plaintiffs have appealed.

The plaintiffs are the Mapledge Corporation, a Maine corporation which we shall hereafter refer to as Mapledge, and Rolland E. Irish, its receiver whom we shall refer to as the receiver. The defendants are John B. Coker and Regina W. Coker, husband and wife. We shall refer to the husband as Coker and the wife as Mrs. Coker. The Eagle Lake Lumber Mills, Inc., a Maine corporation, is indirectly involved in this litigation, and for convenience we shall hereafter refer to it as Eagle Lake. The Development Credit Corporation of Maine, a Maine corporation, is also involved in the action, and for brevity we shall refer to it as Development.

In 1951 Eagle Lake was incorporated for the purpose

of engaging primarily in the manufacture of bowling pins. Its manufacturing plant and office headquarters were located in the city of Eagle Lake, Maine. The defendants invested $10,000 in the capital stock of Eagle Lake. In February 1952, Eagle Lake borrowed $45,000 from Development to finance its operations. On May 29, 1952, Coker became a director of Eagle Lake.

Shortly after the incorporation of Eagle Lake, Mapledge was organized to handle the sales and distribution of bowling pins manufactured by Eagle Lake. Qualifying shares of stock were issued to three individuals who became the directors of the corporation. Eagle Lake subscribed for $44,290 in stock in Mapledge for which payment was not made. On November 15, 1953, Coker purchased the share of stock held by one of the owners of the qualifying shares of stock hereinbefore mentioned. Coker became the president and a director of Mapledge in 1953. Eagle Lake and Mapledge operated out of the same office in Eagle Lake, Maine, and one Michaud became the secretary and bookkeeper for both corporations. Mapledge was considered a subsidiary of Eagle Lake, its directors also being directors of Eagle Lake.

The $45,000 loan to Eagle Lake was secured by a factor's lien upon the material, goods in process, merchandise, and stock of Eagle Lake. On October 10, 1953, Eagle Lake was in default in its payments on the loan made by Development. To secure forebearance by Development in the collection of its loan and to insure the manufacture and delivery of bowling pins to it, Mapledge on January 9, 1954, assigned to Development all merchandise, present and future accounts receivable, and all proceeds from the sale or disbursement of its products as further security for the loan.

The evidence shows that Coker resided in San Diego, California. He had long been and continued to be a jobber of bowling pins. He had purchased and paid for a large quantity of bowling pins from Mapledge

over the years, the total purchase price being in excess of $340,000. The evidence shows that Coker, prior to August 1954, had made advancements on pins which he had in Omaha in the amount of $46,000. In August 1954, Coker paid $20,000 in cash and turned the pins back to Mapledge, accepting stock in Mapledge in the amount of $66,000 as payment of these two amounts. During the same month Mapledge moved its bank account to Omaha and authorized Coker to draw checks on its account.

In the spring of 1955 Eagle Lake closed down its operations. In July following, Development took possession of the assets of Eagle Lake under its factor's lien and sold the same. On July 22, 1955, Development advised Coker and Mapledge that it was claiming all cash, accounts receivable, and stock inventory of Mapledge under the assignment of January 9, 1954. On August 1, 1955, Development filed an action in the Supreme Judicial Court of Maine to secure the appointment of a receiver for Eagle Lake and Mapledge, and for an order restraining the two corporations and its officers from transferring or disposing of any of the assets of the corporations. Coker employed legal counsel who appeared in the action. A restraining order was entered as prayed for. On January 13, 1956, the temporary receiver was appointed. On March 2, 1956, this action was commenced in the district court for Douglas County, Nebraska. Jurisdiction of the subject matter existed by virtue of an attachment of a quantity of bowling pins in an Omaha warehouse which the receiver contended belonged to Mapledge but had been converted by Coker to his own use. Coker appeared in the action and the case was tried, with the result hereinbefore noted.

A primary question for consideration is whether the attached bowling pins were the property of Coker or whether they belonged to Mapledge and were converted by Coker to his own use. The defendants rely on the

validity of the pledge agreement to Mrs. Coker dated January 14, 1955, and the assignment of the bowling pins to her on August 12, 1955. In this respect it is not disputed that Mrs. Coker had advanced $40,000 to Mapledge and that it was indebted to her in that amount.

The evidence shows that there were 1,875 sets of bowling pins in the warehouse at the time of the attachment, and that they had a value of $21,000, according to Coker who is amply qualified to fix their value. It shows also that $6,300 worth of pins had been sold from the warehouse, which amount was being held by the warehouseman subject to the order of the court. The evidence of Coker is that he paid the Moore Bowling Pin Company $2,000 for 400 sets of pins which were placed in the warehouse. He purchased 139 sets of pins for $4,517.50 from Mapledge, which were left in the warehouse. He purchased 278 sets for $5,185.78 from Mapledge which were also left in the warehouse. These 817 sets of pins were admittedly purchased and paid for prior to August 12, 1955. There were 17 sets of pins sold from the warehouse by mutual agreement of the parties. We necessarily conclude that there were 1,058 sets of pins in the warehouse, or cash on hand in lieu thereof, over and above the pins purchased by Coker and sold by the agreement of the parties.

The record clearly demonstrates that Coker, over a long period of time, engaged in the practice of paying in advance for pins ordered by him and had subsequently received shipments of the purchased pins when they were available. The practice had met the approval of Mapledge. The sale of the 817 sets in the warehouse appears to be consistent with the mutual practice of the parties. The pins in the warehouse were held in the name of Coker. From this evidence we think the jury could properly find that the 817 sets of pins hereinbefore described were the property of Coker. Of the 1,058 sets of pins remaining, many were defective pins that had been returned and had no value. The warehouse-

man has a lien for storage, personal taxes paid, and for transportation in the amount of $2,171.02, which is a primary lien on the pins remaining. It is evident that there are pins on hand, or cash in lieu of pins, the ownership of which is alleged to depend upon the validity of the assignment to Mrs. Coker bearing the date of August 12, 1955. The value of the pins purchased by Coker is $11,703.28. The value of the bowling pins over and above the value of those owned by Coker is $9,296.72. These pins were pledged to Mrs. Coker on January 14, 1955, and assigned to her on August 12, 1955. The latter assignment was made after the Supreme Judicial Court of Maine had restrained Mapledge and Coker from transferring or disposing of any of the assets of Mapledge. Coker contends that Mapledge had no creditors other than he and Mrs. Coker when the receivership action was commenced in Maine; that the only purported creditors who filed claims were not creditors of Mapledge; and that Coker had no notice of the restraining order. From the record of the receivership case which was received in evidence, the findings of the court were that Mapledge had existing creditors and that the appointment of a receiver was necessary to protect their rights. Coker appeared in that action by his attorney and made a general appearance. He is bound by the action taken in that case. It is res judicata as to him and he may not contest in this case the issues determined in that litigation.

We point out here that the Supreme Judicial Court for Kennebec County, Maine, has obtained jurisdiction of the receivership proceeding against Mapledge. Coker appeared in that action by legal counsel and the court has acquired jurisdiction of his person. The court issued an order restraining Coker from making any transfer, encumbrance, or assignment of any right, title, or interest, legal or equitable, in any of its property, or property in its possession. The assignment made by Coker to Mrs. Coker on August 12, 1955, was in viola-

tion of the aforesaid restraining order. Such assignment was unlawful and of no force and effect. It could not operate as a valid transfer of title by Coker to his wife. It is asserted that Mrs. Coker had a valid lien on the bowling pins by virtue of her pledge agreement bearing the date of January 14, 1955. The evidence shows however that Mrs. Coker did not foreclose her lien by any legal method provided by law. A general creditor of a pledgor of chattels is entitled to have the lien thereof foreclosed in accordance with law. Rockford Watch Co. v. Manifold, 36 Neb. 801, 55 N. W. 236. Evidence that one holds a lien on personal property is not evidence of ownership. We necessarily hold that we must give full faith and credit to the judgment of the Supreme Judicial Court for Kennebec County, Maine, and further hold that the legal title to the bowling pins belonging to Mapledge upon which Mrs. Coker claims a lien is in the receiver of Mapledge as a matter of law, there being no evidence in the record to support any other conclusion. We do not determine the nature or validity of the collateral pledge agreement executed in favor of Mrs. Coker, bearing the date of January 14, 1955. This is a matter to be determined in a proper action in this state or by the court having jurisdiction of the receivership in the State of Maine.

The present case must be determined upon the issues presented by the pleadings. The plaintiff claims that Coker converted pins belonging to Mapledge. The defendant Coker alleges that he is the owner of the attached bowling pins. This presents the only issue. The jury could well find that Coker owns 817 sets of pins in the warehouse of the value of $11,703.28. There is no evidence to sustain a finding by the jury that Coker owns the remaining pins of the value of $9,296.72. As a matter of law, under the issues in the case, the receiver is the owner of the remaining pins. The court in the instant case instructed the jury that it could find that Coker was the owner of all of the bowling

pins attached. There being no competent evidence in the record that Coker owns more than 817 sets of pins of the value of $11,703.28, it was error for the court to instruct that the jury could find that Coker owns pins in excess of that amount.

The plaintiffs allege as error the failure of the trial court to define a conversion in its instructions to the jury. We think the point is well taken. The jury should have been instructed that a general creditor is entitled to have a lien foreclosed in the manner provided by law, and that a purported conveyance of title by a voluntary assignment, after a receivership proceeding is commenced and the selling or encumbering of the corporate assets restrained, is in fraud of creditors and constitutes a conversion of the property. In Hill v. Campbell Commission Co., 54 Neb. 59, 74 N. W. 388, this court announced the applicable rules governing the subject of conversion. We there said: "A conversion is any unauthorized act which deprives the owner of his property permanently or for an indefinite time. * * * In an action for conversion the motive which prompted the defendant to dispose of, or appropriate to his own use, the property of plaintiff is an immaterial issue. Whether defendant acted in good faith or not is of no consequence." The lien of Mrs. Coker, even if it is subsequently held to be valid, does not vest her with title to the bowling pins. The voluntary assignment of title, made in defiance of the court's restraining order, was void and unenforcible, and did not have the effect of vesting Mrs. Coker, or her assignee Coker, with title to the property. Since the lien and the purported assignment did not have the effect of vesting Mrs. Coker with title, Coker obtained no title. It follows that Coker failed to produce evidence of ownership of the bowling pins in excess of 817 sets of the value of $11,703.28. The jury should have been so instructed.

The trial court in its instructions to the jury submitted questions concerning the collection of proceeds of ac-

counts receivable due to Mapledge and their subsequent payment on a loan made to the bank in Omaha and to Coker on a loan made by him. The trial court also submitted questions concerning the validity and scope of the collateral pledges made to Development and to Mrs. Coker. These issues are outside the scope of the pleadings in the case. The petition alleges that Mapledge was the owner of all the bowling pins and that they were unlawfully converted to the use of Mrs. Coker and her assignee Coker. The answer alleges that the bowling pins were owned by Coker and Mrs. Coker. The only question at issue under the pleadings was the ownership of the pins. The validity of existing liens was not in issue as they are not evidence of ownership. Neither is the question of the payment of $10,000 to himself to be applied upon a $15,000 loan made by him to Mapledge an issue in the case. The sole question under the pleadings was the ownership of the attached pins, and the jury should have been so instructed in a manner to properly present the fact questions supported by the evidence. Buhrman v. Smollen, 164 Neb. 655, 83 N. W. 2d 386.

It is evident that the jury could find that a part of the attached bowling pins belonged to Coker. If the jury so finds, there is no liability on the part of the defendants for such bowling pins. As to the bowling pins upon which no competent evidence of ownership was offered by the defendants, it must be held that their purported assignment to Mrs. Coker was a conversion. As to any such bowling pins, the jury should have been instructed that the measure of damage is the value of such pins at the time and place of conversion, with interest from the date of conversion. It is for the jury to fix the value of the bowling pins converted. The discussion of the evidence of value in this opinion is a reflection of the evidence in the record before us, and the inferences we have drawn therefrom. Such review of the evidence is not intended as a re-

striction upon the jury's function in the retrial of the case.

The verdict of the jury in favor of the defendants is not supported by the evidence. The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

WENKE, J., participating on briefs.