**SHAKESPEARE COMPANY**

v.

**The UNITED STATES.**

**No. 448–65.**

United States Court of Claims.

Nov. 14, 1969.

See also Ct.Cl., 389 F.2d 772.

George D. Webster, Washington, D. C., attorney of record, and John Howard, for plaintiff. Philip L. Hummer, Kalamazoo, Mich., and T. Neal Combs, of counsel.

Gilbert W. Rubloff, with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller, and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner James F. Davis with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a) [since September 1, 1969, Rule 134(h)]. The commissioner has done so in an opinion and report filed on December 5, 1968. Exceptions to the commissioner's findings of fact and recommended conclusion of law were filed by plaintiff. Defendant requested that the court adopt the commissioner's opinion and findings of fact with a single requested modification in the opinion. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, with minor modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

Commissioner Davis' opinion, as modified by the court, is as follows:

Plaintiff seeks to recover part of the excise taxes it paid for 1960 as a manufacturer of fishing reels.[1] Plaintiff was subject to tax under section 4161 of the Internal Revenue Code of 1954 at the rate of 10% of the price for which it sold its reels. Plaintiff sold reels bearing its "Shakespeare" trademark to volume purchasers at discounts of 51-to-55% off list, depending on quantity purchased. It offered the same price terms to all its customers. Most of plaintiff's customers were retailers. Some, however, were distributors who resold to retailers. Plaintiff also sold private-brand reels to several customers who in turn resold under their own trademarks. One such customer was South Bend Tackle Company (hereafter "South Bend"), to whom plaintiff sold reels, substantially identical to "Shakespeare" reels, at 70% off list price of comparable "Shakespeare" models.

The issue is whether plaintiff is entitled under section 4216(b)(2) of the 1954 Code[2] to compute its tax liability

---

1. The Internal Revenue Service asserted a deficiency against plaintiff of $433,920.85, plus $69,805.27 interest, for additional excise taxes for the period October 1, 1960 through September 30, 1963. Plaintiff paid $20,497.44, for the period October 1, 1960 through December 31, 1960, and sues here for refund.

2. Sec. 4216 * * *

(b) *Constructive sale price.—*

* * * * *

(2) *Special rule.—*If an article is sold at retail * * * [or] to a retailer * * * and if—

(A) the manufacturer, producer, or importer of such article regularly sells such articles at retail [or] to retailers * * * as the case may be,

(B) the manufacturer, producer, or importer of such article regularly sells such articles to one or more wholesale distributors * * * in arm's length transactions and he establishes that his prices in such cases are determined without regard to any tax benefit under this paragraph,

(C) the normal method of sales for such articles within the industry is not to sell such articles at retail or to retailers, or combinations thereof, and

(D) the transaction is an arm's length transaction,

the tax under this chapter shall (if based on the price for which the article is sold) be computed on whichever of the following prices is the lower: (i) the price for which such article is sold,

for "Shakespeare" reels on the price for which it sold private-brand reels to South Bend. In a word, section 4216(b)(2) for the period in suit provided a special constructive sales price rule for manufacturers (otherwise qualifying for its use) who sold to retailers and one or more wholesalers. The rule is that the manufacturer's excise tax on a taxable article is computed on the lesser of (1) the actual selling price of the article or (2) the highest price for which such article is sold by the manufacturer to wholesale distributors. Plaintiff says it has met all conditions necessary for application of section 4216(b)(2) and the proper constructive sales price for "Shakespeare" reels is 70% off list.

The Commissioner of Internal Revenue (hereafter "Commissioner") computed plaintiff's tax liability for "Shakespeare" reels on basis of prices equivalent to 51-to-55% off list.[3] Defendant contends this was correct because some of plaintiff's purchasers of "Shakespeare" reels at 51-to-55% off list (those who resold to retailers) were "wholesale distributors" and that the sales prices to them therefore established the "highest price" for which such articles were sold by plaintiff "to wholesale distributors," within the meaning of the statute.

Plaintiff, on the other hand, contends that because it sold "Shakespeare" reels to all its customers on equal price terms and at a maximum 55% discount off list, all its sales were in effect sales "to retailers"; and therefore South Bend was its sole "wholesale distributor." Plaintiff contends further that the normal method of sales of fishing tackle in the industry is not to sell at retail or to retailers; that sales to South Bend were arm's-length transactions; and that "Shakespeare" and "South Bend" reels are identical articles for purposes of section 4216(b)(2).

For reasons discussed below, it is held that plaintiff is not entitled to recover because its price of 51-to-55% off list is, for purposes of the statute, "the highest price * * * to wholesale distributors"; and therefore its tax liability for "Shakespeare" reels was properly computed by the Commissioner. It is unnecessary to discuss other issues, save one, which, as noted below, defendant raises at the threshold.

*The statute*

Section 4216(b)(2) was added to the 1954 Code by the Excise Tax Technical Changes Act of 1958 (hereafter "Changes Act") to supplement what is now section 4216(b)(1) (then 4216(b)). By way of background, manufacturers excise taxes from their inception in 1932 were intended to apply as a percentage of the price at which manufacturers sold to volume purchasers, traditionally at the wholesaler level. Congress early recognized, however, that competitive inequities were created among manufacturers of like goods who sold at different levels of distribution. *E. g.*, a manufacturer which sold at retail rather than to wholesalers charged a higher price for its goods because of increased expenses of distribution at retail. Thus the excise tax paid was accordingly higher, in effect penalizing the manufacturer for its method of distribution. To correct this, Congress enacted section 4216(b) (present 4216 (b)(1)) which provides, among other things, a constructive sales price for manufacturers who sell at retail. In essence, the Commissioner is authorized to compute the tax on basis of a constructive sales price which is the price for which such articles are sold "in the ordinary course of trade, by manufacturers or producers thereof." Generally, the effect of section 4216(b) (present 4216(b)(1)) is to lower the tax base on goods sold by manufacturers at retail.

---

or (ii) the highest price for which such articles are sold by such manufacturer, producer, or importer to wholesale distributors * * *.

3. There is no issue here regarding the price on which plaintiff's sales to South Bend should be taxed. Defendant agrees that the actual selling price, *i. e.*, about 70% off list, is the proper base.

Section 4216(b), however, did not include a like provision for manufacturers who sold to retailers. Many manufacturers considered this an inequity since sales to retailers, like sales at retail, entail higher costs due to increased distribution expenses. At hearings preceding enactment of the Changes Act, there was considerable testimony, and a number of proposed solutions, presented by manufacturers. Generally, the proposals would have amended section 4216(b) to include sales "to retailers," as well as sales "at retail"; or would have eliminated expenses of distribution to retailers from the tax-base price. It was pointed out, however, that any amendment to section 4216(b) which required the Commissioner to determine prices of manufacturers in the ordinary course of trade, or costs of distribution to retailers, would create an undue administrative burden on the Internal Revenue Service. Congress therefore rejected such proposals and, instead, enacted section 4216(b) (2) which requires no administrative determination by the Commissioner of either manufacturer's price in the ordinary course of trade or manufacturer's costs of distribution to retailers or at retail. Rather, section 4216(b) (2) provides for determining tax-base price on basis of the particular sales practices of the manufacturer seeking to invoke the section.[4]

In connection with the Technical Changes Act of 1958, *supra,* the Ways and Means Committee acknowledged that because of significant administrative problems it would be difficult to achieve uniformity of base for purposes of the manufacturers excise taxes. For this reason, no attempt was made in the bill to fully achieve this goal. (H.Rep.No. 481, 85th Cong., 1st Sess., p. 21 (1958–3 Cum.Bull. 372, 392)). See similar statement in the Senate Finance Committee report (S.Rep.No. 2090, 85th Cong., 2d Sess., p. 22 (1958–3 Cum.Bull. 584, 605)).

By its terms, section 4216(b) (2) requires, among other things, that a manufacturer sell at retail or to retailers, and also to one or more wholesalers, in arm's-length transactions. If this condition is met, the inquiry then focuses on the highest price at which the manufacturer sells to wholesalers. If lower than the price at retail or to retailers, it becomes the constructive price upon which sales at retail or to retailers is based. In this way, the tax-base price is lowered to reflect more nearly the purpose of Congress to eliminate therefrom distribution costs to retailers or at retail.

*Normal method of industry sales*

One condition of section 4216(b) (2) is that the normal method by which manufacturers in an industry sell taxable articles must be other than at retail or to retailers. The reason for this is that Congress felt there is no substantial discrimination in tax burden among manufacturers in an industry where most sales are to retailers or at retail. Thus, only where a manufacturer sells at retail or to retailers, in an industry predominantly selling to wholesalers or jobbers, is section 4216(b) (2) intended to apply.

As a threshold argument, defendant says plaintiff has failed to prove that most manufacturers of fishing reels in 1960 sold their products other than at retail or to retailers. Plaintiff, on the other hand, says it has proved that in 1960 most fishing tackle manufacturers sold to wholesalers. The evidence supports plaintiff. While it is admittedly difficult to prove industry selling prac-

4. Taxpayer cites a number of cases which involved only Section 4216(b) (1), not Section 4216(b) (2). See Power Brake Equipment Co. v. United States, 22 A.F.T. R.2d 6147 (D.Ore.1968, on appeal to the Court of Appeals for the Ninth Circuit); E. Albrecht & Son v. Landy, 114 F.2d 202 (8th Cir. 1940); Boise National Leasing, Inc. v. United States, 389 F.2d 633 (9th Cir. 1968); Quaker City Iron Works, Inc. v. United States, 256 F.Supp. 450 (E.D.Pa.1966). Section 4216(b) (1) contains the different concept of "the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof". As indicated in the text, this concept plays no role in Section 4216(b) (2).

tices, due to paucity of published information and reluctance of most manufacturers to disclose customer lists and sales practices, plaintiff has come up with trade association statistics for 1960 which are probative and reliable. (Finding 7(a).) Testimony of witnesses familiar with the fishing tackle industry in 1960 corroborate the statistics. Defendant offered no contrary evidence. Under the circumstances, therefore, plaintiff has carried its burden of proof on this point.[5]

*Sales of "Shakespeare" reels to "wholesalers"*

■ Defendant's principal argument, and one deemed dispositive here, is that plaintiff sold "Shakespeare" reels to wholesale distributors, as well as retailers, at 51-to-55% off list; and therefore such price is the "highest price" for which such articles were sold by the manufacturer "to wholesale distributors," within the meaning of section 4216(b) (2). Thus, defendant considers it immaterial that plaintiff sold comparable reels to South Bend at a lower wholesale price since it is the highest, not the lowest, wholesale price which governs application of section 4216(b) (2). The evidence supports defendant and shows that, notwithstanding its sales policy of equal terms to all customers, plaintiff sold "Shakespeare" reels at 51-to-55% off list to distributors who warehoused them and sold them through catalogs and outside salesmen to retailers on a regular basis and at markups comparable to other goods.

Plaintiff says such sales were not "wholesale transactions" because the price charged was the same as the price to retailers; and that it is unrealistic and contrary to the intent and purpose of section 4216(b) (2) to consider a manufacturer's price to retailers also to be its highest price to wholesale distributors. Neither the statute and its legislative history nor the regulations support this view. The regulations[6] define "wholesale distributors" as "persons who customarily resell to others who in turn resell," a definition consistent with pertinent case law. See West Kentucky Coal Co. v. Walling, 153 F.2d 582, 585 (6th Cir. 1946); Zehring v. Brown Materials, 48 F.Supp. 740, 743 (S.D.Cal.1943). Several of plaintiff's customers fit this well-established definition. Furthermore, wholesale price has been defined as the price which a retailer pays in expectation of obtaining a higher price by way of profit from the ultimate consumer. Guess v. Montague, 51 F.Supp. 61, 65 (E.D.S.C.1942). The record shows that despite plaintiff's selling policy, some wholesalers bought "Shakespeare" reels and resold them to retailers, similarly to other goods, to realize their usual profit.[7]

With respect to the purpose of the statute, plaintiff admittedly made most of its sales of "Shakespeare" reels to retailers. Thus, to the extent that plaintiff's price of 51-to-55% off list includes costs of distribution to retailers, congressional purpose of section 4216(b) (2) is not realized to the fullest extent. However, as above noted, Congress considered, but rejected, proposed legislation which

5. The legislative history of § 4216(b) (2) shows that Congress intended the section to apply only when half or more of the sales of manufacturers in an industry were sales to other than retailers or at retail. See H.R.Rep.No.481, 85th Cong., 2d Sess. (1958–3 Cum.Bull. 372, 394).

Later, Congress recognized the difficulty of proving industry distribution practices; and in 1962, it amended § 4216(b) (2) to obviate this requirement, except for certain industries not including the fishing tackle industry.

6. Temporary Treas.Regs., 26 C.F.R. § 148.1–5(d) (1) (1960), under the Excise Tax Technical Changes Act of 1958, 72 Stat. 1275.

7. This can no doubt be explained by the fact that some retailers in 1960 sold to consumers at or near list price. Therefore, a wholesaler, buying from plaintiff at 55% off list, could resell to a retailer at 10–25% markup and the retailer could in turn resell to a consumer at a fair profit.

would have directly eliminated costs of distribution to retailers from the tax-base price, and Congress also recognized that it was not attempting to achieve fully the goal of complete conformity. While Congress may have hoped section 4216(b) (2) would normally reach the same result, its plain meaning, as applied to the facts here, fails to do so. Courts are powerless to rewrite tax statutes, however appealing it may be. F. W. Fitch Co. v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472 (1945); Helvering v. Rebsamen Motors, Inc., 128 F. 2d 584 (8th Cir. 1942).

■ Plaintiff further says that even if it sold "Shakespeare" reels to wholesale distributors, the sales were *de minimis* and should be ignored. It is not clear from the record what quantity of "Shakespeare" reels passed through distributors to retailers. The evidence shows that at least four of plaintiff's customers were wholesale distributors who resold plaintiff's "Shakespeare" reels to retailers in their ordinary course of doing business. There is also evidence that about 20 of plaintiff's other customers were considered in the trade to be jobbers. To what extent such jobbers resold "Shakespeare" reels to retailers is not clear. It is a fair assumption, however, based on evidence of sales practices of plaintiff's above-noted four customers, that some jobbers resold "Shakespeare" reels to retailers in their ordinary course of business. In any event, the statute does not require sales to wholesalers to be large in quantity. Rather, the legislative history indicates that Congress intended sales to even one wholesaler, if regularly made, to be sufficient to establish a wholesale price.[8]

■ Finally, plaintiff says it is discriminated against vis-à-vis its competitors if it is not permitted to lower its tax base for "Shakespeare" reels to 70% off list. The record shows that in 1960 plaintiff's major competitors sold their name-brand reels primarily to wholesalers at about 60-to-65% off list. However, there is no evidence that plaintiff and its competitors set equal list prices on comparable goods, and thus no real way to compare tax bases and therefore excise tax paid. Thus, what plaintiff seeks is not an end to discrimination but a lowering of its tax base below its competitors by using as a constructive price its lowest, not highest, price to wholesale distributors. Congress intended no such result in the operation of section 4216 (b) (2).

A final point: Defendant says name-brand "Shakespeare" reels and private-brand "South Bend" reels, albeit physically similar, are different articles for purposes of section 4216(b) (2); and thus in no event can plaintiff's price to South Bend be the constructive price on which to tax sales of "Shakespeare" reels. In essence, defendant's argument is that, because of reduced selling and advertising costs, plaintiff's price to South Bend was lower than any contemplated by Congress as a constructive "wholesale" price for name-brand goods.

This argument need not be discussed in detail. However, it is noted that the evidence shows that plaintiff realized significant savings in advertising, distributing and packaging costs by selling reels as private-brand merchandise to South Bend rather than as "Shakespeare" reels. (See finding 6.) In view of Fitch Co. v. United States, *supra,* which holds that advertising and selling costs must be included in the excise tax base; and in view of section 4216(a), 1954 Code, which says that packaging expenses must be included in the price base, there is doubt whether Congress, under the facts here, intended section 4216(b) (2) to operate to reduce the tax base on name-brand merchandise to the price level of private-brand merchandise. The legislative history is not clear on this point, although the question of tax treatment of private-brand merchandise was noted generally during hearings on the

8. H.R.Rep.No.481, 85th Cong., 2d Sess., *supra* (1958–3 Cum.Bull. 394); S.Rep. No.2090, 85th Cong., 2d Sess. (1958–3 Cum.Bull. 584, 607).

Changes Act. See Excise Tax Technical and Administrative Problems, Hearings Before a Subcomm. of the House Comm. on Ways and Means, 84th Cong., 1st Sess., at 248, 397 (1955).

In sum, it is held that section 4216(b)(2) here applies; that plaintiff sold "Shakespeare" reels to wholesale distributors, its highest price being 51-to-55% off list; and that, therefore, the excise tax on "Shakespeare" reels was properly based on the sale price 51-to-55% off list.